[No. 17412. *En Banc.* April 5, 1923.]

## ETHEL MAY MACHENHEIMER, *Respondent,* v. DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant.*[1]

MASTER AND SERVANT (20-1)—WORKMEN'S COMPENSATION ACT—RELATION OF PARTIES—WORKMAN OR INDEPENDENT CONTRACTOR. Decedent, killed while riding on a logging train, was a member of a firm of independent contractors and not an "employee" of the logging company and his heirs are not entitled to the benefit of the Industrial Insurance Act, where under a contract with his firm, he was engaged in repairing boilers for the logging company at its camp, employed and paid by the hour with time kept by its timekeeper, working the same hours as other employees and subject to the orders of the superintendent with power of discharge; but that pay checks were, on the completion of any job, made out to the co-partnership, which designated who should do the work; and the case is not within Rem. Comp. Stat., § 7675, providing that every member or officer of any corporate employer carried on the pay-roll at a salary  . . . .  shall be entitled to the benefit of the act (BRIDGES, PARKER, and PEMBERTON, JJ., dissenting).

Appeal from a judgment of the superior court for Clallam county, Ralston, J., entered May 12, 1922, upon findings in favor of the plaintiff, reversing an order of the department of labor and industries denying a claim against the industrial compensation fund, tried to the court. Reversed.

*The Attorney General* and *John H. Dunbar, Assistant,* for appellant.

*Frank L. Plummer, J. Speed Smith,* and *Henry Elliott, Jr.,* for respondent.

HOLCOMB, J.—On December 10, 1921, while riding on one of the logging trains belonging to the Port Discovery Bay Logging Company, Henry Machenheimer was killed, and his widow, the respondent, filed a claim for compensation with the state department of labor and industries against the industrial compensation

[1]Reported in 214 Pac. 17.

fund. The claim was rejected by the department on the basis that Machenheimer was an independent contractor, and not a workman as the term is defined in the workmen's compensation act. An appeal was taken from the decision of the department to the superior court of Clallam county, where the injury occurred, where a trial was had which resulted in an order reversing the order of the department rejecting respondent's claim, and this appeal is taken from that judgment.

For some time prior to the date of the accident, the Gate City Machine & Auto Shop, a copartnership consisting of Henry Machenheimer, his brother, John Machenheimer, and one Lacelle, was employed by the logging company to repair boilers. Henry and John Machenheimer were expert boiler repairers. They were paid for their time from the time they left their shop in Port Angeles until they returned thereto, at the rate of $1.50 per hour, and their expenses for the time they were absent from their business. At the particular time of the accident, the deceased had been requested to come to the camp of the logging company to repair boilers, and was told that the work would require three or four weeks' time. Usually the Machenheimers were paid increased pay per hour for all overtime, but at the particular time in question they were told that they would not be allowed overtime, but would only be permitted to work the regular hours. When engaged in repairing boilers for the logging company, the Machenheimers, or whichever one of them was doing the work, lived in the camp bunk house of the logging company and procured their meals there.

Testimony was introduced by the logging company's agents and officers to the effect that when one of the

Machenheimers was employed on boiler repairing, the company, through its officers and agents, had the right to direct and control his work as to the manner, time and place of performance, including the right to change the course of the work from one place to another, or to terminate the employment on payment of the accumulated wages; and the one doing the work had the right, at any time, to terminate his work and collect wages in full to the time of the termination of his employment. The trial court found, upon this evidence, that the deceased was so employed and controlled at the time of the accident.

The fact that the work was extra-hazardous employment was not an issue in the trial of the case, but was assumed.

The section of the statute under which it is claimed that deceased was an employee is § 6604-3, Rem. 1915 Code, which defines a workman as follows:

"Workman means every person in this state, who is engaged in the employment of an employer coming under this act, whether by way of manual labor or otherwise, . . . ." [Rem. Comp. Stat., § 7675.]

Section 6604-5 [Rem. Comp. Stat., § 7676], provides that every workman injured under certain circumstances shall receive compensation in accordance with the schedule therein enumerated, and a workman must, therefore, be a person who is engaged in the employment of an employer coming under the act.

Respondent contends that that part of § 6604-3, *supra*, [Rem. Comp. Stat., § 7675], which reads:

"Any individual employer or any member or officer of any corporate employer who shall be carried upon the pay-roll at a salary or wage not less than the average salary or wage named in such pay-roll and who shall be injured, shall be entitled to the benefit of this

act as and under the same circumstances as and sub-
ject to the same obligations as a workman.''
provides that, although the deceased was a member of
a copartnership which was an individual employer as
such, when he was transferred to the service of another
employer he was entitled to the benefits of the act as
a workman.

Respondent cites authorities to the effect that pre-
sumptively a person employed to work on the premises
of another and for that other's benefit is a servant;
*Simila v. Northwestern Improvement Co.*, 73 Wash.
285, 131 Pac. 831, and that the rule laid down in this
state is that the right of control over the workman is
the determining factor in determining whether one is
an independent contractor or a servant or employee
of another, and if the employer may control the man-.
ner of doing the work, the relation of master and ser-
vant exists, no matter what terms may have been
agreed upon as to the method of doing the work. *Lar-
son v. American Bridge Co.*, 40 Wash. 224, 82 Pac. 294,
111 Am. St. 904; *Glover v. Richardson & Elmer Co.*, 64
Wash. 403, 116 Pac. 861; *Olsen v. Veness*, 105 Wash.
599, 178 Pac. 822; *North Bend Lumber Co. v. Chicago,
Milwaukee & P. S. R. Co.*, 76 Wash. 232, 135 Pac. 1017.

Respondent, therefore, states the following factors
as determining whether or not the deceased was a ser-
vant and workman or an independent contractor:

That he was employed and paid by the hour; that
his services were rendered, not at his own shop, but
at the camp of the logging company; that the logging
company furnished the materials and some of the tools
with which he worked; that the timekeeper of the log-
ging company kept his time; that he worked at the
same hours that the other employees of the logging
company worked; that he was subject to the orders of
the superintendent of the logging company as to when

he should work, upon what boilers, and at which place he should work, and whether he should work overtime or not; that on a certain job which he did for the logging company at his own shop he charged a lump sum for the job and not by the hour; that he had a right to terminate his employment at any time he saw fit, and the superintendent of the logging company had the right to discharge him and dispense with his services at will; that the superintendent supervised his work and directed him upon which engine or boiler to work, and what work to do, and could transfer him from one to another; that frequently the superintendent would direct changes as to the number of flues to be taken out and replaced; that Machenheimer worked at all times subject to the orders and suggestions of the superintendent; that he was there to do the work which the logging company wanted done, and to do it to their satisfaction.

On the other hand, the evidence shows that, when any work had been completed by deceased or his brother, an account was made out in the name of the Gate City Machine & Auto Shop and rendered to the logging company; that the partnership designated who should go to the logging camp and do the work, and that one of the Machenheimers nearly always was selected to go to the logging comp to repair their boilers; that the manner of repairing was generally entirely entrusted to whichever one should be sent to do the work, the logging company's superintendent only designating which boiler was to be repaired first, and which next, and how many flues in each boiler were defective and needed repairing, but the workman was left to do the work as he pleased. The payment for the services was sent to the Gate City Machine & Auto Shop, the check being made payable to that firm. The money was paid into the general funds of the

partnership and used to pay general operating expenses, and the surplus, if any, was distributed among the partners. The only contractual relation existing was between the logging company and the partnership, and Henry Machenheimer was not employed by the logging company. It is apparent, therefore, that deceased was one of a firm of independent contractors, who rendered services in the course of their occupation to the logging company, and were only subject to the will of the employer logging company as to the result of the work, and not as to the means by which it was accomplished. *Cary v. Sparkman & McLean Co.*, 62 Wash. 363, 113 Pac. 1093; *North Bend Lumber Co. v. Chicago, Milwaukee & P. S. R. Co.*, 76 Wash. 232, 135 Pac. 1017.

Under the circumstances shown in this case, the deceased was no more an employee of the logging company than a plumber who would be sent by a firm to do plumbing work in the owner's house, or a boiler repairer sent to repair a heating plant in the owner's house.

We are therefore compelled to conclude that the trial court's judgment was erroneous in holding that the deceased was a workman and employee of the logging company entitled to participate in the industrial compensation fund.

The judgment of the trial court is reversed, and the order of the department of labor and industries is affirmed.

MAIN, C. J., TOLMAN, FULLERTON, MACKINTOSH, and MITCHELL, JJ., concur.

BRIDGES, J. (dissenting)—In the case of *Glover v. Richardson & Elmer Co.*, 64 Wash. 403, 116 Pac. 861, we said:

"Whether a person performing work for another is performing it as an independent contractor or as a servant or employee of that other is a question not always easy of solution, but all of the authorities agree that the test of the relationship is the right of control on the part of the employer."

In that case we quoted approvingly from 26 Cyc. 1546, as follows:

" 'An independent contractor is one who, carrying on an independent business, contracts to do a piece of work according to his own methods, and without being subject to the control of his employer as to the means by which the result is to be accomplished, but only as to the result of the work. Generally the circumstances which go to show one to be an independent contractor, while separately they may not be conclusive, are the independent nature of his business, the existence of a contract for the performance of a specified piece of work, the agreement to pay a fixed price for the work, the employment of assistants by the employee who are under his control, the furnishing by him of the necessary materials, and his right to control the work while it is in progress except as to results.' "

Under the distinctions thus drawn (which I think are correct and in accord with the great weight of authority), I cannot come to the conclusion that the deceased, Henry Machenheimer, was an independent contractor and not a servant of the logging company. The court's opinion shows that he was employed by the hour and not by the job; that the logging company furnished a part of the tools with which he did the work; that it kept his time; that he was informed that he should work the same number of hours as the rest of the employees of the camp and should not be permitted to work overtime; that the superintendent of the company reserved the right to direct upon what boilers the deceased should work and as to how that

work should be done.  He also had the right to discharge the deceased for any reason.  All of these conditions, it seems to me, are inconsistent with the idea that the deceased was an independent contractor.

Indeed, all of the elements that go to make up the ordinary and everyday relationship of employer and employee exist here, except that the deceased was a member of a firm which did the major portion of its work in a shop belonging to that firm, but which on occasion send members of the firm out to do work such as was done in this case, and except, also, that the pay was sent directly to the firm and not to the deceased.  It seems to me that these excepted items are of no considerable importance.  If the deceased and his partners were independent workmen when they worked in their own shop, they ceased to be such when they went out to work on the premises and under the control and supervision of another.  For these reasons, I dissent.

PARKER and PEMBERTON, JJ., concur with BRIDGES, J.