[No. 28601.   Department Two.   October 6, 1942.]

ELSIE MARY CLAUSEN, *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES *et al., Appellants.*[1]

[1]Reported in 129 P. (2d) 777.

The Attorney General, Roy A. Huse, and John E. Close, Assistants, for appellant Department of Labor & Industries.

C. C. Quackenbush and Edward J. Lehan, for appellant Spokane County.

Dillard & Powell and F. M. O'Leary, for respondent.

JEFFERS, J.—Albert A. Clausen was killed on October 18, 1940, while cutting wood on land owned by Spokane county, pursuant to a permit issued to him by the county commissioners. His death was caused by a tree which he was cutting falling upon him.

On December 11, 1940, Elsie Mary Clausen, widow of deceased, filed with the department of labor and industries a claim for pension on behalf of herself and

five minor children. On January 20, 1941, the department, after making an investigation of the death of Mr. Clausen, rejected the claim for pension, for the reason, as appears from its order, that at the time of his death Mr. Clausen was not employed, but was cutting wood for himself under a permit from Spokane county, and that he was not, therefore, a "workman," within the meaning of the workmen's compensation act.

Application for a rehearing before the joint board was made by claimant, which application was granted and a hearing set for April 18, 1941, at Spokane. The ground upon which claimant asked for a rehearing was:

"That her husband, Albert A. Clausen, was accidentally killed on or about the 18th day of October, 1940, while clearing land for Spokane county in due course of employment for said Spokane county . . ."

At the hearing held April 18, 1941, and a continued hearing held June 10, 1941, the following witnesses were sworn and testified: Elsie Mary Clausen, H. A. Raymond, deputy auditor of Spokane county and as such clerk of the board of county commissioners of Spokane county, and J. W. Sullivan, one of the county commissioners of Spokane county.

The following exhibits were identified and introduced:

Exhibit B:

"BEFORE THE BOARD OF COUNTY COMMISSIONERS OF SPOKANE COUNTY, WASHINGTON

"IN THE MATTER OF CLEARING AT THE SUNSET AIRPORT, SPOKANE COUNTY } Resolution

"WHEREAS, a portion of the Sunset Airport is covered with forest, and

"WHEREAS, improvement of the airport will demand that this growth of timber be removed, and

"WHEREAS, this improvement by the United States is believed imminent and would be expedited by the removal of the aforesaid forest growth,

"Now, THEREFORE, BE IT RESOLVED by the board of county commissioners that it is deemed to the best interest of the county, state and national that this standing timber be given to needy families who may apply for same and that the timber be cleared from the site by this method.

"PASSED BY THE BOARD, this 9th day of July, 1940.

"BOARD OF COUNTY COMMISSIONERS
OF SPOKANE COUNTY, WASHINGTON
Charles Finucane
J. W. Sullivan"

Exhibit A:

"PERMISSION TO CUT WOOD

"PERMISSION is hereby granted to Albert Clausen to cut wood on the site of the Sunset Airport under the following terms and conditions:

"1. Wood is to be for the use of the grantee only and none is to be sold.

"2. After cutting the wood, the grantee hereunder agrees to clean up the site in a workmanlike manner, piling all brush.

"BOARD OF COUNTY COMMISSIONERS
OF SPOKANE COUNTY, WASHINGTON
By J. W. Sullivan

"Terms Accepted:
"Albert A. Clausen, Grantee."

Exhibits A and B are the only records relative to the issuance of a permit to Mr. Clausen appearing in the records of the county commissioners.

It appears without dispute, from the testimony of Mr. Raymond and Mr. Sullivan, that no record of any kind was kept of the hours worked by Mr. Clausen, nor was he directed in what manner the cutting should be done, how much he should cut, or where he should cut. It further appears that from fifty to seventy-five of these permits were issued, and that all an applicant

had to do to get a permit was to come in and say he was "needy," and the permit would be issued. As we have said, no record was kept of the time any of these permit holders worked, or of the amount of wood they cut. In fact, the commissioners made no investigation to see whether or not they ever cut any wood under their permits; when a permit was issued, that was the end of it as far as the commissioners were concerned. The commissioners never at any time had any person employed to check on the work that was done, nor did the county at any time attempt to supervise the work. The county furnished no tools, the men who cut the wood furnishing their own tools and trucks, or whatever was used in transporting the wood to their homes.

Mr. Sullivan, who signed the Clausen permit, testified that he did not know Mr. Clausen personally, and had no independent recollection of the circumstances surrounding the issuance of the permit. Mr. Sullivan was asked the following question:

"Q. After the issuance of permits, similar to applicant's exhibit A, did you or did any other member of the board know whether or not wood was cut? A. No, I never did—after they got the permit, I never knew whether they cut it or not. Q. At the time this permit and similar permits were issued, was there any negotiations then pending between Spokane county and the government of the United States relative to the clearing of timber on the property now known as the Sunset Airport? A. No, sir."

Mr. Sullivan testified specifically that he never directed Mr. Clausen where he should cut, how much he might cut, or how he was to do the work. In other words, his testimony was to the effect that, after the permits were issued, the commissioners paid no further attention to the matter in any way. No record was kept of this work, and no report made by the county to the department, as would be required by the

workmen's compensation act if Mr. Clausen was in fact a "workman" under the act.

The testimony of Mrs. Clausen, the only other witness, did not tend in any way to contradict the testimony of Mr. Raymond or Mr. Sullivan, but was to the effect that the Clausens needed wood, and she induced Mr. Clausen to get a permit; that Mr. Clausen cut wood where he wanted to, and at such times as he was not employed, and that he was not directed in any way as to where or when he should cut; that he cut about fifteen cords of wood, using his own tools, and hauled this wood home; that he had been cutting about a month at the time he was killed. She further testified that Mr. Clausen was not on relief during the time he was cutting this wood, but that he was drawing unemployment compensation.

The joint board, on June 23, 1941, entered its order sustaining the action of the supervisor. From this order claimant appealed to the superior court for Spokane county, which, on October 10, 1941, after an examination of the record as made before the joint board, and after argument of counsel, made and entered findings of fact, conclusions of law, and judgment reversing the order of the joint board, and remanding the cause to the department, with directions to award a pension to claimant, and four hundred dollars attorney's fees to the counsel for claimant. The department has appealed to this court from the judgment of October 10, 1941.

Error is assigned upon the entry by the court of findings of fact Nos. 2, 3, 6, and 9, conclusions of law Nos. 1, 2, and 3, and the judgment reversing the order of the joint board.

Appellant states that its assignments of error raise a single question, namely: Has respondent successfully met and overcome the *prima facie* presumption of the

correctness of the order of the joint board denying the widow's compensation? It is our opinion that the question to be determined on this appeal is whether Clausen was an employee or an independent contractor, under the terms of the workmen's compensation act.

Rem. Rev. Stat. (Sup.), § 7674-1 [P. C. § 3469d], defines "workman" as follows:

"The term workman within the contemplation of this act means every person in this state who is engaged in the employment of or who is working under an independent contract, the essence of which is his personal labor for any employer coming under this act whether by way of manual labor or otherwise in the course of his employment."

As already stated, the joint board held that Clausen did not come within the terms of the statute, and denied the claim of the widow. As the facts in this case are not disputed, and the question is solely one of law to determine the relationship which arose, the rule that the department's decisions are *prima facie* correct has no application. *Krause v. Department of Labor & Industries*, 2 Wn. (2d) 268, 97 P. (2d) 1082; *Johnson v. Department of Labor & Industries*, 3 Wn. (2d) 257, 100 P. (2d) 382.

In the interpretation of the workmen's compensation act, this court has held that, while the act should be liberally construed in favor of those who come within its terms, persons who claim rights thereunder should be held to strict proof of their right to receive benefits provided by the act. Therefore, it is necessary that the claimant (respondent in this case) establish that her husband, at the time of his death, was either an employee of Spokane county, or was occupying the status of an independent contractor. *Kirk v. Department of Labor and Industries*, 192 Wash. 671, 74 P. (2d) 227.

■ In determining whether an employee-employer relationship exists, the common-law rules should be applied, except as modified by the statute. *Hinds v. Department of Labor and Industries,* 150 Wash. 230, 272 Pac. 734, 62 A. L. R. 225; *Hubbard v. Department of Labor and Industries,* 198 Wash. 354, 88 P. (2d) 423.

■ In order to sustain her contention that Clausen was an employee, it was necessary that respondent establish, by clear and convincing evidence, that a contract of employment existed. 1 Schneider, Workmen's Compensation Text (Perm. ed.) 582, § 223 (a); *Hillestad v. Industrial Ins. Commission,* 80 Wash. 426, 141 Pac. 913; *Hinds v. Department of Labor and Industries, supra; American Products Co. v. Villwock,* 7 Wn. (2d) 246, 109 P. (2d) 570, 132 A. L. R. 1010. We are of the opinion that respondent has not established, nor does the record otherwise show, that the deceased, at the time of his death, was an employee of Spokane county.

■ It is impossible to lay down a rule by which the status of a person performing a service for another can be definitely fixed as an employee. Ordinarily no single feature of the relation is determinative, but all must be considered together. Particularly is it important to consider the following elements: the right of control and discharge, payment of wages, and the contractual relationship, whether express or implied. 1 Schneider, Workmen's Compensation Text (Perm. ed.) 575, § 220.

This court has recognized that there are a number of factors which have evidentiary value in determining whether or not there is a contract of employment, the most important of which is the right to control the means and manner of the performance of the work to be done. *Hinds v. Department of Labor and Industries, supra.* The fact that the right of control may

not have been exercised is unimportant as long as the power to control exists.

From the evidence in this case, it does not appear that the county had any right of control. The holders of the permits were not bound to cut any timber at all. They were free to either exercise the right under the permit, or to ignore it. Naturally, it was assumed, by both the county and the holders of the permits, that they would. attempt to cut some trees and thus procure wood, but this assumption does not establish that there was any contractual undertaking, sufficient under the act to establish the relationship of employee-employer. The county had no right and made no attempt to instruct or direct Clausen as to the manner of felling the trees, or the hours which he should work. Clausen was allowed to determine the area in which he should start his cutting, and where and how he should proceed. He did not contact or report to the county in any manner after receiving his permit. He did not look for or expect supervision or direction from any county official.

It is evident to us, from all the evidence, that neither party to this permit intended to create an employee-employer relationship. While we appreciate that the intention of the parties is not necessarily controlling, nevertheless intention is a factor to be considered in analyzing the legal relation arising from this transaction and in determining whether or not the one party assumed to exercise control over the alleged employee. Restatement of the Law of Agency, § 220. The permit went no further than to allow Clausen to enter upon this land and cut trees for wood. The permit was conditional only in two respects: first, that the timber was not to be resold; and second, that the permit holder would clear and pile the brush. This surely does not suggest sufficient control over the details and method

of proceeding with the work to prove that a contract of employment existed. The written instrument does not prescribe the manner in which the clearing was to be done, nor was anything said in reference to it. In addition, we have the further factor that Clausen furnished his own tools and equipment. No record was ever made of the timber he cut, or the hours he worked.

It is our opinion that the testimony is too indefinite and uncertain to establish any contract of employment. We have not overlooked the rule announced in *Simila v. Northwestern Imp. Co.*, 73 Wash. 285, 131 Pac. 831, that "presumptively a person employed to work on the premises of another and for that other's benefit is a servant." While this presumption, under certain conditions, may be used by one who claims to be an employee, to establish *prima facie* the relationship of employer and employee, we are of the opinion that, even if it be conceded that the presumption is applicable in this case, this presumption was overcome by the evidence introduced by the department.

However, respondent contends that, even though Clausen may not have been an employee, he still came within the act as an independent contractor.

The workmen's compensation act does not specifically define the term "independent contractor." There are many definitions of the term, but, as stated by 27 Am. Jur. 481, § 2, perhaps the one most frequently quoted is to the effect that an independent contractor is one who, in exercising an independent employment, contracts to do certain work according to his own methods, and without being subject to the control of the employer, except as to the product or result of his work.

In *Glover v. Richardson & Elmer Co.*, 64 Wash. 403, 116 Pac. 861, we adopted the rule announced in 26 Cyc. 1546, as follows:

" 'Generally the circumstances which go to show one to be an independent contractor, while separately they may not be conclusive, are the independent nature of his business, the existence of a contract for the performance of a specified piece of work, the agreement to pay a fixed price for the work, the employment of assistants by the employee who are under his control, the furnishing by him of the necessary materials, and his right to control the work while it is in progress except as to results.' "

The rule last above announced was cited with approval in *Pyle v. 2-Miracle Concrete Corp.*, 126 Wash. 384, 218 Pac. 246.

The *Glover* case, *supra*, is referred to in *Machenheimer v. Department of Labor & Industries*, 124 Wash. 259, 214 Pac. 17. We think the rule was in effect approved in *Hubbard v. Department of Labor & Industries*, 198 Wash. 354, 88 P. (2d) 423.

Prior to the 1937 amendment to the act, it was firmly established in this state that an independent contractor was not entitled to the benefits of the workmen's compensation act. Since the passage of the 1937 amendment (Rem. Rev. Stat. (Sup.), § 7674-1), we have had an interpretation of that statute in two cases, *Norman v. Department of Labor & Industries*, 10 Wn. (2d) 180, 116 P. (2d) 360, and *Haller v. Department of Labor & Industries*, 13 Wn. (2d) 164, 124 P. (2d) 559. It is evident, as stated in the *Haller* case, *supra*, that, while it was the intention of the legislature to extend the scope of the workmen's compensation act to cover some independent contractors, it was not the intent to cover all whose contracts call for the performance of extrahazardous work. The effect of the *Norman* and *Haller* cases, *supra*, is to limit the act to those working under an independent contract the essence of which is the personal labor of the one so working.

We have, then, in this state the general rule as to the circumstances which generally go to show one to be an independent contractor, limited by the rule announced in the *Norman* and *Haller* cases, that only one working under an independent contract, the essence of which is the personal labor of the one so working, comes within the act.

No one of the factors hereinbefore mentioned is conclusive in determining the nature of the relationship. However, in *Burchett v. Department of Labor & Industries,* 146 Wash. 85, 261 Pac. 802, 263 Pac. 746, we quoted with approval from 14 R. C. L. 72, a statement to the effect that no single fact is so conclusive in showing that the relationship is not that of an independent contractor as that the employer has the unrestricted right to terminate the particular service whenever he chooses, without regard to the final result of the work itself. As we stated in *Hubbard v. Department of Labor & Industries, supra,* the power of the employer to terminate the employment at any time is incompatible with the free control of the work usually enjoyed by an independent contractor.

We are of the opinion that, under the rule hereinbefore announced, no contract, either express or implied, was shown in this case, which could be the basis of a claim by respondent that Clausen was an independent contractor.

While it may be admitted that in cutting the trees to obtain wood the personal labor of Mr. Clausen was the chief factor, and that such work was extrahazardous, yet it was not agreed that Clausen had to cut any timber; he was not bound to produce any definite result; nor, on the other hand, was the county bound to allow Clausen to continue his work. The county, in so far as the evidence shows, could at any time have revoked the permit, before or after any wood had been cut.

·It is impossible for us to conclude, from the facts in this case, that Clausen was an independent contractor who could proceed, free from control, until a definite result had been obtained.

When all the facts and circumstances are considered, we are convinced that it does not appear that Mr. Clausen was a "workman" within the meaning of the workmen's compensation act.

For the reasons herein assigned, the judgment of the trial court is reversed, with instructions to enter judgment affirming the order of the joint board.

ROBINSON, C. J., BEALS, and BLAKE, JJ., concur.

MILLARD, J. (dissenting)—The judgment should be affirmed. Clearly, Clausen was a "workman" under the workmen's compensation act. He was either an employee of the county or he was working under a contract. In either case, he was under the act. Whether he was paid in money or money's worth is not material; whether paid in wood or in cash did not change the relationship. See *Garney v. Department of Labor & Industries,* 180 Wash. 645, 41 P. (2d) 400; *Fitzgerald v. Department of Labor & Industries,* 181 Wash. 325, 42 P. (2d) 805, and *Blake v. Department of Labor & Industries,* 196 Wash. 681, 84 P. (2d) 365.

If Clausen were an independent contractor, he was entitled to the benefits of the workmen's compensation act as interpreted by us in *Norman v. Department of Labor & Industries,* 10 Wn. (2d) 180, 116 P. (2d) 360, and *Haller v. Department of Labor & Industries,* 13 Wn. (2d) 164, 124 P. (2d) 559. I reiterate that whether Clausen, at the time of his death, was an employee of Spokane county or whether he was an independent contractor is not material; in either event, he was entitled to the benefits of the workmen's compensation act.