[No. 19081–4–I. Division One. February 8, 1988.]

MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, *Respondent,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant.*

160

*Kenneth O. Eikenberry, Attorney General,* and *Thornton A. Wilson* and *James S. Kallmer, Assistants,* for appellant.

*William H. Beaver* and *Philip A. Talmadge* (of *Karr, Tuttle, Koch, Campbell, Mawer, Morrow & Sax, P.S.*), for respondent.

WEBSTER, J.—The Department of Labor and Industries (DLI) appeals the trial court's decision that certain insurance agents are not "workers" covered by the Industrial Insurance Act (Act). We affirm.

### PROCEDURAL HISTORY

In a routine audit covering 1978, 1979 and the first half of 1980, DLI determined that certain insurance agents working under contract with Massachusetts Mutual Insurance Company were "employees" covered by the Act. DLI then issued an order assessing Massachusetts Mutual industrial insurance premiums for those agents. Massachusetts Mutual appealed to the Board of Industrial Insurance Appeals, which upheld DLI's order on the theory that the agents were, instead, "independent contractors" covered by the Act. Massachusetts Mutual timely appealed the board's order to the King County Superior Court, which, after a bench trial, reversed the Board's order. DLI now timely appeals that decision.

## Facts

In order to sell its insurance policies, Massachusetts Mutual relies on the services of general agents, financed agents, career agents, and brokers[1] whose services are procured through a series of contracts. Massachusetts Mutual contracts with general agents on a form supplied by Massachusetts Mutual entitled "General Agent's Contract". Paragraph 4 of the contract then authorizes the general agent to contract with career and financed agents (hereinafter referred to as sales agents) on a form supplied by Massachusetts Mutual entitled "Career Contract". The general agent may not alter this contract.

After the career agent's contract is executed between the sales agent and the general agent,[2] it is forwarded to Massachusetts Mutual for its approval and signature. Appearing at the end of the contract, the "approval" provision states that Massachusetts Mutual "approves" the contract and that, in the event the contract between Massachusetts Mutual and the general agent is terminated, Massachusetts Mutual will continue to accept applications for insurance from and pay commissions to the sales agents under the same terms and conditions set forth in the career agent's contract. No evidence showed that Massachusetts Mutual had ever disapproved a career agent's contract. As a practical matter, whenever the general agent's contract had been terminated, another general agent always took over.

The duties of a general agent include the promotion of Massachusetts Mutual's business as well as the recruitment of sales agents. General agents may and do delegate their duties to others provided they comply with local law.

---

[1] The status of brokers under the Act is not at issue in this case.

[2] A financed agent enters into an additional contract with the general agent on a form prepared by Massachusetts Mutual entitled "Career Capital Plan Financing Agreement". Under this arrangement, the financed agent receives a training allowance to help him get started in the business. The funds are provided by Massachusetts Mutual to the general agent, who then forwards the funds to the financed agent. The general agent must return one-half of the funds in the event the financed agent does not complete the program.

The duties of a sales agent are to contact clients and sell insurance policies. The sales agents advise prospective clients on insurance matters and then help them purchase insurance from a company of the client's choice. Agents may represent up to 50 insurance companies at a time. Except for the actual signing of the insurance application, the sales agents may delegate their duties. For example, the agents commonly hire telephone solicitors.

After considering the foregoing evidence, the trial court found that the agents were neither "employees" nor "independent contractors" covered by the Act, reversing the Board's determination that Massachusetts Mutual owed industrial insurance premiums for the agents.

## DISCUSSION

■ Judicial review in the Court of Appeals is governed by RCW 51.52.140 which provides in part that: "Appeal shall lie from the judgment of the superior court as in other civil cases." *Du Pont v. Department of Labor & Indus.*, 46 Wn. App. 471, 476, 730 P.2d 1345 (1986) (quoting *Department of Labor & Indus. v. Moser,* 35 Wn. App. 204, 208, 665 P.2d 926 (1983)). Therefore, this court must determine whether the trial court's findings, to which error is assigned, are supported by substantial evidence and whether the conclusions of law flow therefrom. *Du Pont,* at 477. The findings to which DLI has assigned error reflect the trial court's application of the Act to a factual situation. The determination of whether a particular statute applies to a factual situation is a conclusion of law. *Blake v. Federal Way Cycle Ctr.,* 40 Wn. App. 302, 309, 698 P.2d 578, *review denied,* 104 Wn.2d 1005 (1985). Consequently, our court's inquiry focuses on whether the trial court correctly applied the law to the facts.

Prior to 1937, the independent contractor was not covered by the Act nor was the party with whom he contracted required to pay industrial insurance premiums. In 1937, the Legislature expanded the definition of workman (now "worker") to include coverage for independent contractors

when the essence of the contract is his or her personal labor for the employer. *Lloyd's of Yakima Floor Ctr. v. Department of Labor & Indus.*, 33 Wn. App. 745, 748, 662 P.2d 391 (1982); *White v. Department of Labor & Indus.*, 48 Wn.2d 470, 474, 294 P.2d 650 (1956); RCW 51.08.180.[3] In expanding the definition of workman, the Legislature intended to protect workers

> in those situations where the work could be done on a regular employer–employee basis but where, because of the time, place, manner of performance, and basis of payment, it could be urged that the workman was an independent contractor rather than an employee. . . . It was felt to be desirable, and rightly so, to eliminate the technical issue of whether the workman was an employee or an independent contractor by giving him protection in either situation.

*White,* at 474. In determining whether the essence of the contract is personal labor for the employer, we look to the contract, the work to be done, the situation of the parties, and other attendant circumstances. *Lloyd's of Yakima,* at 749; *Cook v. Department of Labor & Indus.*, 46 Wn.2d 475, 476, 282 P.2d 265 (1955).

Based on its review of prior case law, the *White* court identified three independent contracting situations which the Legislature intended to exclude from the expanded definition of workman. Excluded from the Act's coverage was the independent contractor (1) who of necessity owned or supplied machinery or equipment (as distinguished from the usual hand tools) to perform the contract, or (2) who obviously could not perform the contract without assistance, or (3) who of necessity or of choice employed others

---

[3]RCW 51.08.180 in part reads:

"'Worker' means every person in this state who is engaged in the employment of an employer under this title, whether by way of manual labor or otherwise in the course of his or her employment; also every person in this state *who is engaged in the employment of or who is working under an independent contract, the essence of which is his or her personal labor* for an employer under this title, whether by way of manual labor or otherwise, in the course of his or her employment". (Italics ours.)

to do all or part of the work he has contracted to perform. *White,* at 474.

The *of choice* language of the third *White* guideline excludes from the Act's coverage the agents at issue because they may and do delegate part of their work to others. However, DLI contends that the *of choice* language should be disregarded for three reasons: (1) it does not explain the decisions in cases examined by the *White* court in formulating the guideline; (2) it has not been applied in any case since *White;* and (3) it contradicts the language of the Act.

The *White* court formulated the language at issue based on two cases in which the independent contractor was found to be excluded from the Act's coverage. *White,* at 474. Those cases are *Haller v. Department of Labor & Indus.,* 13 Wn.2d 164, 124 P.2d 559 (1942) and *Crall v. Department of Labor & Indus.,* 45 Wn.2d 497, 275 P.2d 903 (1954). In *Haller* the independent contractor agreed to clear a well. The job required the use of a hoist which was provided by the owner of the property. Because the assistance of another person was needed to operate the hoist, the independent contractor hired another. *Haller,* at 165. Hence, the decision in that case may be explained by either guideline number 2 or the *of necessity* language of guideline number 3.[4]

While the result in *Haller* does not explain the *of choice* language in guideline number 3, the result in *Crall* does. In *Crall* the independent contractor, who owned several trucks and employed others to drive them, was hired to haul logs. The contract did not require that the independent contractor himself drive the trucks. *Crall,* at 499. Thus, in *Crall,* the man who had contracted for the hauling services did not care whether the independent contractor performed the contract personally. He knew other drivers might be used.

---

[4]Independent contractors excluded under guideline number 2 would also be excluded by the *of necessity* language in guideline number 3. Therefore, DLI correctly points out that the *of necessity* language is superfluous.

While noting that the *Crall* decision could also be explained by the necessary logging trucks used (guideline number 1), the *White* court cited *Crall* as standing for the proposition that the Act does not cover an independent contractor when the contracting parties contemplate that the labor will be done by others, in whole or in part. *White,* at 473.

■ DLI has not assigned error to findings of fact 2.25, 2.26 and 2.27, so they are verities on appeal. *Sherwood v. Bellevue Dodge, Inc.,* 35 Wn. App. 741, 669 P.2d 1258, 676 P.2d 557 (1983). The thrust of these findings is that the agents may and do delegate significant portions of their duties to others. Although the case at bar is more complex than the one in *Crall,* both cases have in common the fact that the contracting parties contemplated the delegation of duties by the independent contractor. Therefore, under both the third *White* guideline and the *Crall* case upon which the guideline was formulated, we must conclude that none of the insurance agents at issue here are "workers" for purposes of the Act.

DLI has urged this court to follow those jurisdictions finding coverage of insurance agents. *See Davis v. Home Ins. Co.,* 291 So. 2d 455 (La. Ct. App. 1974); *Sones v. Mutual of Omaha Ins. Co.,* 272 So. 2d 739 (La. Ct. App. 1972); *Vance v. Hut Neckwear Co.,* 281 A.D. 151, 118 N.Y.S.2d 327 (1952); *Gordon v. New York Life Ins. Co.,* 300 N.Y. 652, 90 N.E.2d 898 (1950). *Contra, Spulak v. Estep,* 216 Neb. 523, 344 N.W.2d 475 (1984) (insurance agent not covered by the Act). However, the cases cited by DLI, while sometimes factually analogous, are nonetheless unpersuasive because, in those cases, a determination that the individual was an independent contractor ended the analysis of the case and precluded coverage under the particular act. On the other hand, our statutory scheme and case law provides for a closer look at certain independent contractors.

■ Finally, Massachusetts Mutual contends that it should receive attorney fees because the appeal is frivolous. The test for determining whether an appeal is frivolous is

set out in *Streater v. White,* 26 Wn. App. 430, 435, 613 P.2d 187, *review denied,* 94 Wn.2d 1014 (1980):

(1) A civil appellant has a right to appeal under RAP 2.2; (2) all doubts as to whether the appeal is frivolous should be resolved in favor of the appellant; (3) the record should be considered as a whole; (4) an appeal that is affirmed simply because the arguments are rejected is not frivolous; (5) an appeal is frivolous if there are no debatable issues upon which reasonable minds might differ, and it is so totally devoid of merit that there was no reasonable possibility of reversal.

We conclude that this appeal is not frivolous. We have already noted that courts in other jurisdictions have found insurance agents covered by their respective workmen's compensation statutes.

We, therefore, affirm the trial court's decision and do not award attorney fees on appeal to Massachusetts Mutual.

SCHOLFIELD, C.J., and GROSSE, J., concur.